# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO SOTO,<br><br>                              Plaintiff,<br>  vs.<br><br>SUPERIOR TELECOM, INC., a California Corporation, individually; 7-ELEVEN, INC., a Texas Corporation, on behalf of itself and other similarly situated; DHAMI CORPORATION, a California Corporation, on behalf of itself and others similarly situated; and DOES 1-1000,<br><br>                            Defendants. | CASE NO. 10-CV-0135-IEG (BLM)<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>[Doc. No. 8] |

      Presently before the Court is Defendants 7-Eleven, Inc. and Dhami Corporation's Motion to Dismiss Plaintiff's First Amended Complaint. The Court finds the motion suitable for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having considered the parties' arguments, and for the reasons set forth below, the Court DENIES the motion to dismiss.

## BACKGROUND

### I.    Factual Background

      This matter pertains to the sale of prepaid telephone cards and the disclosure of fees and costs associated with such cards. The facts are drawn from Plaintiff's First Amended Complaint ("FAC").

Defendant Superior Telecom, Inc. ("STI") markets, sells, and services prepaid telephone cards. These cards provide purchasers with a PIN and an 800-number that they can then use to access telecommunication services up to the allotted number of minutes they have bought. STI markets a particular prepaid phone card with the brand name "Bonita Señorita," which it sells to retailers.

Over the past two years, Plaintiff Ricardo Soto ("Plaintiff") purchased Bonita Señorita phone cards from a 7-Eleven, Inc. convenience store operated by Defendant Dhami Corporation ("Dhami"). Dhami operated the store under a franchise agreement with franchisor Defendant 7-Eleven, Inc. ("7-Eleven"). Plaintiff purchased each Bonita Señorita phone card from Dhami's store for $5.00, which purportedly provided him 50 minutes of calling time to La Paz, Bolivia, at the advertised rate of $0.10 per minute. Plaintiff is originally from Bolivia, and frequently uses prepaid phone cards to contact friends and family who live there. When Plaintiff dialed the provided 800-number and entered his PIN, a voice prompt informed him he had 50 minutes of calling time on the card.

However, Plaintiff alleges that he did not receive the full 50 minutes of calling time.[1] Plaintiff alleges he was unaware of the rates, charges, and fees associated with the Bonita Señorita phone card, and that had he known about those charges, he would not have purchased the card. According to him, the applicable rates, charges, and fees, among other information, were not displayed on the prepaid card itself, the card's packaging, or at or near the point of sale, as is required under California law.

**II.     Procedural History**

Plaintiff filed suit on December 15, 2009, with a request for class certification in the Superior Court for the County of San Diego. On January 19, 2010, 7-Eleven removed the case to this Court. After Plaintiff filed the FAC, Defendants 7-Eleven and Dhami filed the present motion to dismiss. On March 18, 2010, the hearing on the motion was vacated when the Court issued an Order to Show Cause why this case should not be dismissed for lack of subject matter jurisdiction. [Doc. No. 9]. Defendant filed a response to the Order to Show Cause on April 2, 2010. On April 6, 2010, satisfied with Defendant's response, and noting no objection from Plaintiff, the Court reset the motion to dismiss for a hearing on May 3, 2010. [Doc. No. 11]. Subsequently, the Court found the motion was

---

[1] Plaintiff does not allege how many fewer minutes he received, but simply that he "did not receive 50 minutes as promised," (FAC ¶ 14), and that these numbers were "reduced." (FAC ¶ 17.)

suitable for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. A complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts under a cognizable legal claim." SmileCare Dental Group v. Delta Dental Plan of Cal., 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009) (citation omitted).

Despite the deference, the court need not accept "legal conclusions" as true. Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949-50 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S. Ct. at 1950.

## DISCUSSION

Plaintiff puts forth two causes of action against Defendants 7-Eleven and Dhami. As his sixth cause of action, Plaintiff alleges 7-Eleven and Dhami violated Section 17538.9(b)(3) of the California Business and Professions Code by "failing to make available clearly and conspicuously in a prominent area immediately proximate to the point of sale" the information about charges, costs, and fees for the Bonita Señorita phone cards.[2] And in the seventh cause of action, Plaintiff seeks declaration of rights

---

[2] Unless otherwise noted, all future textual references to "Section 17538.9" will refer to Section 17538.9 of the California Business and Professions Code, which provides in pertinent part:

> (b) The following standards and requirements for consumer disclosure and services shall apply to the advertising and sale of prepaid calling cards and prepaid calling services:
>
> . . . .
>
> (3) The company shall print legibly on the card or packaging, so that it may be

and duties under Section 17538.9 between the putative plaintiff and defendant classes.

**I.      Violation of Section 17538.9**

Defendants raise two arguments with respect to the sixth cause of action. First, pertaining only to 7-Eleven, Defendants argue that Plaintiff has not stated a claim because franchisees such as Dhami operate as independent contractors, and Plaintiff's conclusory allegations of joint action are insufficient to establish the existence of any actual control by 7-Eleven over Dhami. Second, Defendants argue Plaintiff lacks standing to pursue a claim under Section 17538.9 because he has not alleged any facts showing that he "lost money or property" as a result of the purchase.

   A.     7-Eleven's liability

Defendants argue Plaintiff's allegations that Dhami and 7-Eleven were "joint venturers as it

---

> read without having to open any packaging, and the retail vendor shall make available clearly and conspicuously in a prominent area immediately proximate to the point of sale of the prepaid calling card or prepaid calling services the following information, which shall be current at the time of printing and for as long as it is displayed:
>
>   (A) The value of the card and all ancillary charges.
>
>   (B) Ancillary charges for international calls to each country for which the card may be used or, in lieu of disclosing ancillary charges for each country, the highest ancillary charges for any international calls applicable on that card and any additional or different prices, rates, or unit values applicable to international usage of the prepaid calling card or prepaid calling services.
>
>   (C) The minimum charge per call, such as a three-minute minimum charge, if any.
>
>   (D) The definition of the term "unit," if applicable.
>
>   (E) The billing decrement.
>
>   (F) The name of the company.
>
>   (G) The recharge policy, if any.
>
>   (H) The refund policy, if any.
>
>   (I) The expiration policy, if any.
>
>   (J) The 24-hour customer service toll-free telephone number required in paragraph (9).

CAL. BUS. & PROF. CODE § 17538.9(b)(3).

1  pertains to the retail sale of prepaid calling cards" and that they "possess joint management and
2  control of the sale of the Bonita Señorita cards" are insufficient to state a claim for relief against 7-
3  Eleven. First, Defendants argue the allegations of joint management and control are "bare assertions,"
4  "conclusory," and are "not entitled to be assumed true." See Iqbal, 129 S. Ct. at 1951. Second, even
5  taking these allegations as true, Defendants argue they do not establish that 7-Eleven had any control
6  over the means and manner in which Dhami sold phone cards. Third, Defendants argue that other
7  courts to consider the issue have determined that 7-Eleven franchisees are independent contracts rather
8  than agents of 7-Eleven, and accordingly their acts may not be imputed to 7-Eleven.

9        First, with respect to the adequacy of the allegations, Plaintiff's FAC provides more than "bare
10 assertions" and "conclusory" allegations. See id. For example, the FAC alleges that "[u]nder the terms
11 of its standard franchise agreement, 7-Eleven, Inc. requires its franchisees, such as Dhami, to offer and
12 sell certain 'Categories of Inventory,'" including "Prepaid Cards" such as the Bonita Señorita cards.
13 (FAC ¶ 18.) The FAC further alleges that 7-Eleven "devotes substantial time and effort developing
14 and marketing its Prepaid Card product category" by controlling which products the franchisees are
15 required to sell, negotiating the purchase terms with the distributors of the cards (such as STI), and
16 overseeing the installation and maintenance of electronic equipment used to activate and "charge" the
17 cards at the register. (FAC ¶ 19.) Finally, the FAC alleges that Dhami and 7-Eleven "share in the
18 profits and losses of the Bonita Señorita cards" and that they "possess joint management and control
19 of the sale of the Bonita Señorita cards." (FAC ¶ 20.) Viewed as a whole, these specific allegations
20 amount to more than a "formulaic recitation of the elements," and they are a far cry from the "bare
21 assertions" and "conclusory" allegations that the Supreme Court found inadequate in Iqbal. See 129
22 S. Ct. at 1951 (holding that allegations that Attorney General Ashcroft was the "principal architect"
23 of the illegal confinement policy, and that FBI Director Mueller was "instrumental" in adopting and
24 executing it, were "conclusory" and "not entitled to be assumed true"). Accordingly, the Court rejects
25 Defendants' first argument that the allegations in the FAC are not entitled to be assumed true.

26       Second, taking Plaintiff's allegations as true, they adequately state a claim for relief against
27 7-Eleven. "The law is clear that a franchisee may be deemed to be the agent of the franchisor." Kuchta
28 v. Allied Builders Corp., 21 Cal. App. 3d 541, 547 (1971) (citations omitted). Under California Law,

1  "[a]n agent is one who represents another . . . in dealings with third persons." CAL. CIV. CODE § 2295.
2  While actual agency is generally created by express agreement or ratification, agency can also be
3  implied by the conduct of the parties. Van't Rood v. County of Santa Clara, 113 Cal. App. 4th 549,
4  571 (2003). The hallmark of an agency relationship is that one person agrees to act on behalf of
5  another and subject to his control. See In re Coupon Clearing Serv., Inc., 113 F.3d 1091, 1099 (1997)
6  (applying California law). However, because degrees of control can vary, the question of whether the
7  franchisee is an independent contractor or agent is ordinarily one of fact. Kuchta, 21 Cal. App. 3d at
8  547. Only "[w]hen the essential facts are not in conflict and the evidence is susceptible to a single
9  inference, [is] the agency determination . . . a matter of law for the court." Emery v. Visa Int'l Serv.
10 Ass'n, 95 Cal. App. 4th 952, 960 (2002) (citation omitted).

11         In the present case, the FAC contains sufficient allegations from which a jury could find that
12 7-Eleven exercised strong control over Dhami, at least as it relates to the sale of prepaid calling cards.
13 The FAC alleges that 7-Eleven "requires its franchisees" to offer and sell certain categories of
14 inventory, including the Bonita Señorita cards. (FAC ¶ 18.) The FAC also alleges 7-Eleven controls
15 which prepaid calling cards are sold, negotiates the purchase terms with the distributors of the cards,
16 and "oversees the installation and maintenance of electronic equipment used to activate and 'charge'
17 the cards at the register." (FAC ¶ 19.) Finally, the FAC alleges that Dhami and 7-Eleven "share in the
18 profits and losses of the Bonita Señorita cards." (FAC ¶ 20.) These elements of control are sufficient
19 to support an implied finding of agency. See, e.g., Kuchta, 21 Cal. App. 3d at 547 (finding an implied
20 agency relationship where the franchisor controlled the location of the franchisee's place of business,
21 prescribed minimum display equipment, regulated the quality of goods used or sold, approved the
22 design and utility of the construction, had the right of inspection, and shared in the profits).

23         Finally, the cases on which 7-Eleven relies do not support granting a motion to dismiss. First,
24 although each of these case *does* find that no agency relationship existed between 7-Eleven and one
25 of its franchisees, each case reaches that conclusion at a later stage of the proceedings, after discovery
26 in support of those factual issues, see, e.g., Cislaw v. Southland Corp., 4 Cal. App. 4th 1284, 1294-95
27 (1992) (finding no triable issue of fact as to the existence of an agency relationship to survive
28 summary judgment where the franchisee attested she "had the right to exercise, and actually exercised,

1 'full and complete control' over all employment, inventory and marketing decisions, including the
2 decision to sell clove cigarettes"), or is simply inapposite, see, e.g., <u>DiPilato v. 7-Eleven, Inc.</u>, 662 F.
3 Supp. 2d 333, 347 (S.D.N.Y. 2009) (applying a combination of several tests to determine whether
4 plaintiff was an employee for the purposes of her ADEA and Tile VII claims); <u>Chelkova v. Southland</u>
5 <u>Corp.</u>, 331 Ill. App. 3d 716, 723 (2002) (granting summary judgment where the issue was a question
6 of law – whether there was a voluntary undertaking of legal duty by franchisor). Second, these cases
7 do not stand for the proposition that 7-Eleven is *never* considered to be in an agency relationship with
8 its franchisees, as 7-Eleven's argument would seem to suggest.

9   In sum, the FAC alleges sufficient facts to state a claim for relief against 7-Eleven. Beyond
10 that, it would be the province of the trier of fact to determine whether an agency relationship exists
11 where, as here, more than one inference may be drawn from the facts.[3]

12   B.   Standing requirement

13   Defendants next argue that Plaintiff does not have standing to assert a violation under the False
14 Advertising Law ("FAL"), CAL. BUS. & PROF. CODE § 17500 *et seq.*, which includes Section 17538.9,
15 because Plaintiff has not alleged that he has paid more than the value of what he received in return.

16   A private person has standing to assert a claim under the FAL only if he "has suffered injury
17 in fact" and "has lost money or property as a result of a violation." CAL. BUS. & PROF. CODE § 17535.[4]
18 To claim a loss of money or property under Section 17535, "a plaintiff must have either prior
19 possession or a vested legal interest in the money or property lost." <u>See</u> <u>Walker v. USAA Cas. Ins.</u>
20 <u>Co.</u>, 474 F. Supp. 2d 1168, 1172 (E.D. Cal. 2007) (interpreting an identical provision in Section 17204
21 of the California Business and Professions Code), <u>affirmed</u> 558 F.3d 1025, 1027 (9th Cir. 2009).

---

[3] Because the Court has determined that the FAC alleges sufficient facts to state a claim for relief against 7-Eleven based on an agency relationship, the Court does not reach Plaintiff's alternative argument that 7-Eleven cannot be dismissed because it is "an absent member of the Defendant Class."

[4] The more rigid standing requirements of Section 17535 were put into effect by the passage of Proposition 64 in 2004 and are a change from earlier broad grants of standing under the law. <u>Californians for Disability Rights v. Mervyn's, LLC</u>, 39 Cal. 4th 223, 227-28 (2006). Many of the cases herein discussing standing under Proposition 64 do so in terms of the Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200 *et seq.* However, for the purposes of the FAL, the discussions are interchangeable because, as the California Supreme Court has noted, Proposition 64 made identical changes to the UCL and the FAL. <u>See</u> <u>Californians for Disability Rights</u>, 39 Cal. 4th at 229 n. 2; <u>accord</u> <u>Buckland v. Threshold Enters., Ltd.</u>, 155 Cal. App. 4th 798, 819 (2007).

In the present case, Plaintiff has alleged sufficient facts to demonstrate that he "lost money or property" in which he had a vested legal interest as a result of Defendants' actions. The FAC alleges that Plaintiff purchased each Bonita Señorita card from a 7-Eleven store operated by Dhami for $5.00 believing that he was purchasing 50 minutes of calling time to Bolivia. (FAC ¶ 12.) Plaintiff believed that he was getting 50 minutes of calling time due to the advertisements he saw at other convenience stores and because he was informed by the voice prompt that the card had 50 minutes when he called the 800 number provided on each calling card. (Id.) The FAC further alleges that because of undisclosed fees and charges imposed by STI, Plaintiff "did not receive 50 minutes as promised." (FAC ¶ 14.) Rather, Plaintiff received fewer minutes then he believed he would receive (FAC ¶¶ 14, 17.) These allegations are sufficient to demonstrate that Plaintiff lost money (i.e., the excess money he paid for each minute below the promised 50 minutes) or property (i.e., each minute of calling time below the 50 minutes that he did not receive) as a result of Defendants' failure to disclose the applicable fees and charges. See Troyk v. Farmers Group, Inc., 171 Cal. App. 4th 1305, 1348 (2009) (finding that plaintiff sufficiently alleged "lost money" where plaintiff asserted he was required to pay service charges in addition to the premium stated in his policy); Aron v. U-Haul Co. of Cal., 143 Cal. App. 4th 796, 802-03 (2006) (concluding that plaintiff sufficiently alleged "injury in fact" because he suffered economic loss by being required to purchase excess fuel on return of a rental truck).

**II.  Declaratory Relief**

Defendants also ask the Court to dismiss Plaintiff's seventh cause of action for declaratory relief if the Court grants the motion to dismiss with respect to the sixth cause of action. In light of the Court's denial of the motion to dismiss with respect to the sixth cause of action, this request is moot.

**CONCLUSION**

For the foregoing reasons, the FAC alleges sufficient facts to state a claim for relief against 7-Eleven based on an agency relationship. The FAC also contains sufficient allegations to satisfy the standing requirement under Section 17535. Accordingly, the Court **DENIES** the motion to dismiss.

**IT IS SO ORDERED.**

DATED: June 2, 2010

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**